No. 26,541.

School District No. 5, of Leavenworth County, *Appellant,* v. George Ferrier and Burt Cork, Partners, et al., *Appellees.*

SYLLABUS BY THE COURT.

1. Conspiracy—*Fraud in Construction of Building—Evidence—Question for Jury.* In an action against the architect and contractors charging a conspiracy between them to defraud the district in connection with the construction of a schoolhouse, it is held that under the evidence the issue as to the liability of the defendants was a question of fact properly submitted to the jury.

2. Same — *Instruction — Request for Submission of Issues Constituting Misjoinder.* Where an action for conspiracy to defraud is brought against two defendants and a verdict in their favor is returned, the plaintiff cannot effectively complain of the refusal of the court to submit to the jury an issue of breach of contract, neither of the defendants having been a party to the contract between the plaintiff and the other.

Appeal from Nemaha district court; C. W. Ryan, judge. Opinion filed December 11, 1926. Affirmed.

*George K. Melvin* and *R. E. Melvin,* both of Lawrence, for the appellant.

*Hal E. Harlan, A. M. Johnston,* both of Manhattan, *A. C. Malloy, Roy C. Davis* and *Warren H. White,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

Mason, J.: A school district employed an architect to draw plans for a new schoolhouse, and to supervise its construction. The plans were drawn and a contract for its construction was entered into between the district and a firm of contractors. The building was erected, accepted and paid for, the last payment being made in November, 1921. This action was brought by the district against

Conspiracy, 12 C. J. p. 645 n. 74, 81.

the contractors and the architect, the petition alleging that they had entered into a conspiracy, which was not discovered until June 1, 1923,·to defraud the district, in pursuance of which a new set of blue prints was made, involving the· skimping of material in quantity and quality, and by this device an inferior building was constructed at a saving of cost to the contractors. A jury trial resulted in a verdict and judgment for the defendants, from which the plaintiff appeals, contending that the uncontroverted facts entitled it to a judgment, and that the instructions to the jury were materially erroneous.

1. The working drawings, which were made after the contract had been signed, called for the use of reënforced concrete instead of certain structural steel provided for in the original plans. The plaintiff's theory is that this was in pursuance of a conspiracy to defraud entered into by the architect and contractors. The defendants' explanation, which there was evidence to support, may be thus summarized:

There is a general custom for concerns interested, with the permission of the architect of a proposed building, to submit an alternate design with respect to some detail, stating the price, for the use of any bidder who may see fit to include in his bid an alternate proposition based upon such change, the proposer later making working drawings in case a bid is accepted which includes his alternative. The Concrete Engineering Company, of Kansas City, made an estimate on a part of the construction, on the basis of the elimination of a part of the structural steel work already noted, which it furnished to the bidders on the schoolhouse, including the defendant contractors. The proposal as submitted to contractors for bids included eleven alternates. One of them, numbered 7, was for a system of reënforced concrete floor construction instead of steel form construction specified in the plans. This was submitted by the Concrete Products Company, a different concern from the Concrete Engineering Company. The defendant contractors made the lowest bid. They did not bid on the seventh alternative. After the bids were opened on July 14, 1920, the architect and the school board discussed them for several hours in executive session. The proposal for the alternate design of the Concrete Engineering Company was specifically discussed at· this meeting. .The defendant contractors were called in on the suggestion of the architect, who asked them particularly, and

in the presence of all three members of the board, why they had not filled out the blank opposite alternative number 7. They answered that the reason was that their bid was based on the alternative design of the Concrete Engineering Company. The next day the bid of the defendant contractors was accepted (this being at the option of the district, for the call for bids reserved the right to reject all) and the contract was executed. Later the working plans corresponding to the estimate of the Concrete Engineering Company were prepared by that company, approved by the architect, and turned over to the contractors. On the morning of July 14 the contractors asked the architect if the Concrete Engineering Company's design would be acceptable and he told them it would.

The jury, in response to special questions, made findings to this effect: The design of the Concrete Engineering Company, used in constructing the building, was approved by the architect. Neither defendant attempted to conceal from the members of the school board the fact that this design was used. The Concrete Engineering Company's plans were around the building during its construction, where they could have been examined by the members of the school board if they desired. The architect acted in good faith in approving these plans, so far as the jury knew. The contractors acted in good faith in bidding and in constructing the building, and did not intend to defraud the plaintiff in any manner in connection with its construction. The architect and the contractors did not conspire together to defraud the plaintiff. To the question whether the architect intended to defraud the plaintiff in any manner in connection with the construction, the jury answered: "We do not know his intentions."

Obviously the issue whether the defendants were guilty of the charge upon which the action was based—conspiracy to defraud— was one to be submitted to the jury, upon which the verdict, approved by the trial judge, is final unless shown to be affected by some error committed at the trial. In behalf of the plaintiff, however, it is argued that upon the conceded facts the defendants were guilty of legal fraud and breach of contract resulting in recoverable damages. Assuming that evidence given of defects in the building was conclusive, and that as a legal proposition, by virtue of the parol evidence rule, the obligation of the contractors was the same as though no change of design had been made or attempted, the question

2—122 Kan.

whether the defendants could be held liable in the present action is substantially the same as that raised by the objection to the instructions, which will now be considered.

2. After the jurors had deliberated a part of two days they asked for further instructions. In response to this application the court gave an additional instruction which, after defining a "contract" and "fraud," proceeded:

"A 'tort' is a legal wrong committed upon a person or property, independent of contract. In modern practice, tort is constantly used as an English word to denote a wrong, or wrongful act, for which an action will lie, as distinguished from a contract.

"In connection with the above definitions, which are given to help make plainer this, and other, instructions heretofore given you, you are instructed that you cannot allow damages to plaintiff in this case simply because you may believe from the evidence, if you do so believe, that the defendants, or any of them, failed to perform their contracts with the plaintiff, and that by reason of such breach of contract the plaintiff suffered some damage. In this connection you are further instructed that, although you may believe from the evidence that plaintiff sustained some damage, yet, unless you shall further find and believe from a preponderance of the evidence that such damage was the direct and proximate result or consequence of the fraud of defendants, or some of them, intentionally practiced upon the plaintiff, and was not merely from breach of contract, then your verdict should be for the defendant, or such of the defendants as you find from the evidence were not guilty of such fraudulent conduct."

While some verbal criticism is made of this instruction, it affords no ground of reversal unless the court erred in holding that no recovery could be had for mere breach of contract, as the jury had been told in the original charge by fair implication. The present case is not one where under the doctrine of the election of remedies the plaintiff is bound to choose between tort and contract, and the selection of one prevents a reliance at any time or in any way on the other, as for illustration, where one whose property has been wrongfully taken waives the tort and sues for its value as upon an implied contract, thereby committing himself to the theory that the title has passed. Here there is no necessary inconsistency between the existence of both fraud and breach of contract. There may possibly have been a failure to carry out the contract and a conspiracy to cover up the fact by fraud. But the plaintiff, having specifically pleaded fraud and tried the case on that basis, could not effectively complain of the refusal of the court to allow a recovery to be had for breach of contract. Especially is this so in view of the fact that a cause of action against the contractors for failure to perform their contract

to erect the building could not have been rightly joined with one against the architect for the breach of his contract to supervise the erection; nor could an action upon the contract of either have been joined with an action for the fraud of the other. The plaintiff elected to proceed against the architect and the contractors for a fraud for the perpetration of which they were alleged to have conspired. It could not, by virtue of that proper joinder, get them into court upon a pleading adapted thereto, and then in the same action obtain relief against them on a basis which if pleaded would have made its petition demurrable for misjoinder.

The judgment is affirmed.

JOHNSTON, C. J., not sitting.